### TOWNSEND et al. v. LORRAINE CORPORATION.

District Court, S. D. California, Central Division. December 21, 1929.

Lyon & Lyon, Frank L. A. Graham, and Henry S. Richmond, all of Los Angeles, Cal., for plaintiffs.

Westall & Wallace, of Los Angeles, Cal., for defendants.

JAMES, District Judge. Application is made in this suit for a temporary injunction. Infringement is charged, the patent involved being for an apparatus commonly known as an oil and gas separator. Such devices are in general use in the oil fields, and serve the purpose of separating and collecting the gas which accompanies the flow of crude oil from producing wells. No detailed description of the process by which the desired result is accomplished need be given. Method and means have been given elaborate attention in decisions made in cases wherein the parties now litigating were before the court. The Circuit Court of Appeals, in Lorraine v. Townsend, 290 F. 54, considered the patent of the plaintiff here, and held that it was valid, although entitled to no claim as of generic or pioneer character.

The patentable invention found was held to affect only the manner in which the oil, upon entering the chamber of the trap, was distributed. The court determined that the claims of the Trumble patent were valid only when read upon an apparatus "by which substantially the whole body of oil is spread as a film or thin sheet on a backing wall, and is not, in the course of the process of separation, broken up by any' means into drops or streamlets. ° ° °"

In the Trumble device the oil entering the chamber is discharged upon conical spreaders imperforate in surface, which extend near to and entirely around the inner circumference of the shell of the trap. In process of operation, the oil is said to dispose itself in a thin sheet, not only over the spreaders, but leaving the spreaders it would reach the sides of the chamber and continue downward, still in a thin sheet, and equally disposed. It is not probable that in actual operation, with fluctuating heads of oil and gas, the thing will work to the degree of perfection which the description just used implies, but it evidently attains some approximation of that condition. The Court of Appeals greatly restricted the finding of the trial judge made favorable to the Trumble claims, and held that one device only of those

exhibited as having been produced by Lorraine, came within the field of infringement. That was Towner (or Tonner) No. 3, as the trap was designated in the record in that case. Reading the decision with the argument for the narrow construction which the court allowed to the Trumble patent, it would seem that Towner No. 3 trap is a border-land device as measured by the Trumble invention; it comes within the field with little to spare. In that device a baffle plate is used, and therein is the only similarity of construction of Towner No. 3 and Trumble. The infringing device did not utilize, as Trumble utilized, baffle plates of extensive surfaces in conjunction with the circular interior surface of the shell as a backing wall upon which to so dispose the oil that it might be rendered into a thin film. Lorraine used only a segment of the wall with one baffle plate. It should be affirmed, I think, that the extreme range of equivalence possible to be allowed to Trumble was reached in the holding that Towner No. 3 infringed. The Trumble patent is not for *any* apparatus that will distribute the oil in the oil trap in a thin film upon a backing wall; it is for a device that is as the Trumble patent describes, and one that operates as that does.

If the inlet pipe extended entirely around the inner circumference of the trap shell and was perforated thickly with outlet holes through which the oil would be projected against the wall of the shell, so that it formed approximately a continuous film, which would flow down the surface, it could not be contended at all that Trumble's invention was represented in that device. There would be no equivalency except in the result attained. Then, supposing that the feed pipe in another form extended around the inner circumference of the shell, and that outlet apertures directed at an angle toward the surface of the shell effected the projection of the oil upon that circular surface, one stream connecting with the other, the whole effect being to cause the oil to run down the inner surface of the shell in a more or less continuous sheet, plainly there would be no infringement of the Trumble patent. These illustrations serve to emphasize the fact that it is the form of apparatus that gives to the Trumble device its distinction and novelty.

In the model which defendant has marketed, the inlet pipe is enlarged after entering the shell of the trap, and prolonged completely around the shell, the opening being against the side of the shell. At the point of opening, the lower wall of the conduit is bent downward and brought to an end, while the inner wall alone is continued some distance further. It is quite plain that the main force of the oil is directed against the inner wall of the shell, and spread upon that wall, the amount of forward spreading being naturally dependent upon the amount of force which propels the stream of fluid. A considerable part of the stream must also drop at and after the point where the lower wall of the conduit is brought to an end.

In my opinion, the apparatus is not reasonably an equivalent of Trumble's use of the oil-spreading baffle plates. I think to hold differently would be to allow a claim for the broadest kind of equivalents, far beyond that permitted by a fair interpretation of the decision of the Circuit Court of Appeals.

The application for a temporary injunction will be denied. An exception is allowed the plaintiffs.